LOTT v. BALLEW.　(No. 1232.)

(Court of Civil Appeals of Texas.　Amarillo.
Oct. 31, 1917.)

1. LANDLORD AND TENANT ⬦⟞⟞331(2)—BREACH
OF LEASE CONTRACT—EVIDENCE—MEASURE.

Where defendant counterclaimed for plaintiff's breach of contract to demise to him agricultural land, and. it did not appear when the crop should be divided, the value of the crop in the field which it was claimed would have been raised does not establish defendant's measure of damages, for he might have been required to gather the crop before division should be made, in which case necessary expenses for labor in addition to that of himself and his family should be deducted in computing his profits.

2. LANDLORD AND TENANT ⬦⟞⟞331(2)—BREACH
OF CONTRACT TO LEASE — EVIDENCE — MEASURE.

Where a landowner breached his contract to demise certain agricultural land, thus depriving his tenant of employment, the amount earned by the tenant in. other employments, or the amount he could have earned by leasing other equally available land, should be deducted from his recovery.

3. LANDLORD AND TENANT ⬦⟞⟞331(6)̄ — LEASE
CONTRACT—ACTIONS FOR BREACH—EVIDENCE.

Where defendant counterclaimed for plaintiff's breach of contract to lease to him agricultural land, evidence as to controversies between plaintiff and other tenants concerning the leasing of his land is inadmissible.

4. TRIAL ⬦⟞⟞25(9) — ARGUMENT — RIGHT TO
OPEN AND CLOSE.

Where defendant who counterclaimed did not admit all of the items of plaintiff's claim, there was no such admission as required by rule 31 (142 S. W. xx) for the district and county courts so as to entitle defendant to open and close the argument; this being true though but one affirmative fact important to plaintiff's recovery was denied.

Appeal from Donley County Court; J. H. O'Neal, Judge.

Action by H. Lott against F. L. Ballew, who counterclaimed. From a judgment for defendant, plaintiff appeals. Reversed.

Taylor, Allen & Taylor, of Henrietta, and E. A. Simpson, of Clarendon, for appellant. A. T. Cole, of Clarendon, for appellee. ·

HUFF, C. J.　The appellant, Lott, sued the appellee, Ballew, on a note for $649, with a credit thereon of $40, bearing interest at the rate of 10 per cent. per annum from date, together with 10 per cent. as attorney's fees in case of nonpayment at maturity, or if placed in the hands of an attorney for collection, or if sued upon, and to foreclose a mortgage lien on certain mules, wagons, and crops given to secure the note.　He also sued to recover rent from 100 acres of land under a rent contract, by the terms of which appellee was to pay one-fourth of all lint and seed cotton and one-third of all grain crops, alleging that appellee was due appellant the value of the one-fourth of the lint and seed cotton and one-third of all grain grown on said tract of land.　It is alleged that there were five bales of cotton grown thereon, setting out the weights, and that appellee was due appellant $100.12 for the one-fourth of the cotton and $55 for the feedstuff grown thereon.　The appellee answered by general denial, and specially by way of cross-petition that the 100 acres which he did rent was sod land, and that under the original contract' appellant agreed to rent to appellee, in. addition thereto, 50 acres of old ground for the purpose of growing cotton, which was to be planted thereon, and that plaintiff failed to furnish such land, but that he permitted other tenants to crop the same, and that thereby appellee lost wholly the proceeds and profits which would have accrued to. him by virtue of having said 50 acres of cotton grown for the year 1916; that his three-fourths in said cotton would have been $16 per acre, with the labor power and tools, which he would have provided, and which he had provided, if it had been grown to maturity without further outlay or expense to him, but that appellant refused to deliver the 50 acres of land, or any portion thereof, to his damage, $800.00.

The first assignment is that the court erred in refusing to sustain appellant's exception to the cross-action because it did not state a cause of action, and did not allege a legal measure of damages which resulted from the failure to furnish the 50 acres of land.

[1, 2] The second and third assignments of error relate to the testimony of Sam Byers and W. M. Holland, both to the effect that cotton standing ready to gather would have been worth from $20 to $25 per acre because the evidence was irrelevant and immaterial and tended to prove an improper measure of damages.　The terms of the rental contract are not definitely alleged or proved; that is, whether the tenant was to furnish the teams, tools, and labor or whether the landlord should furnish part.　It is apparently treated, however, by the parties that this obligation was resting on the tenant.　Neither is it alleged and proven how the crop should be divided under the contract, whether standing in the field, at the gin, pen, or after sale. It appears to be treated as if the tenant should cultivate, gather, and thereafter divide.　If there was no agreement as to these matters, it was a simple contract to rent for the year 50 acres of land; then perhaps the value of its use for that term would be the measure of damages for its breach; but the allegation and the evidence is that the defendant was to pay for the use of the land one-fourth of the cotton and one-third of the grain.　However the condition in which this record leaves the case, it is rendered difficult for us to treat the objections as made.　If the tenant was to furnish teams, tools, and labor and was to gather and gin the cotton and to gather and house the grain, then the value

of the cotton per acre. while standing in the field was not the proper measure of damages. It might be no error to permit evidence of its value while standing in the field as one of the factors to be considered in obtaining the probable value of the crops to the tenant when gathered and divided. "The rights of the parties are founded on the contract, and the wrong done is compensated for when the injured party is allowed the full value which he would have produced, less the expense of which he has been relieved." Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 88 L. R. A. (N. S.) 713. If in gathering the cotton the tenant would·have been required to employ labor other than his own or that of his family, this amount must be deducted from the price of the cotton. "The profit to be realized out of the crops over and above the value of the labor and other outlays expended in making them is therefore not all that is contemplated in such contracts. Employment for the tenant or cropper when so secured is valuable, whether a profit over and above such labor and other expenses is realized or not, and this may be true as to the labor of members of his family which he can control and utilize without extra expense." Id. We have gone to the statement of facts in this case and ascertained therefrom that the above witnesses testifying evidently arrived at the value of the cotton per acre standing in the field from their judgment as to what the land should have produced that year and what its market value when sold in the bale would have been. In arriving at this they, of course, made no allowance for what it would have cost the tenant to gather this cotton over and above his own labor and that of his family. The case appears to have been tried upon the theory· of the value of the cotton on the stalk ungathered, and the witnesses were permitted to state this without showing the cost of labor or whether there was any necessity for extra labor. The record in this case shows there was no other evidence warranting the recovery for the alleged breach. The assignments and statements in this case are such that it is difficult to determine whether we can properly reverse the case on the assignments as made. However, it is obvious the case was tried on a wrong theory, one calculated to injure the rights of the appellant. There was error in the admission of this evidence, as this record shows it. It seems to us the proof should first have shown the probable yield and the value thereof after it was gathered ready for the market. Now there is evidence in the record showing that appellee obtained other labor, which he did because of his failure to obtain this 50 acres of land. The sum of this should have been deducted from the possible profits. So he may have picked other cotton for which he was paid by reason of his en-forced idleness. If he got pay for his labor or could have secured employment and other land as good and on the same terms by the use of reasonable diligence, then this too should have been deducted. The case evidently was not considered upon this theory nor so briefed, yet we do not feel warranted in ignoring the now established rule in this state. Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753; Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 88 L. R. A. (N. S.) 713; Smith v. Milam, 143 S. W. 293. We also refer to the case of Bost v. McCrea, 172 S. W. 561, where this court approved a charge of the trial court presenting the rule on a case somewhat like this.

[3] The fourth, fifth, and sixth assignments present error as to the testimony of three witnesses, to the effect that other tenants of Lott in the neighborhood of the land rented and occupied by appellee were unable to get their quota of land, and that there was a great deal of squabbling between Lott and the other tenants; that there was a general report that Lott was short of old land, and there were several complaints from the men that they did not get the land they had rented; that Lott had had a good deal of trouble down where his land was situated and several controversies, and that he would continue to have them. Clearly no part of this evidence was admissible. Trouble with his other tenants and controversies with them could not have thrown any light on this case, and could have had no other effect than a mischievous one and to create a prejudice against Lott. In fact, Lott admitted that he agreed to give Mr. Ballew 50 acres of old land, but later he found another man, a Mr. Morgan, was holding and claiming the land and that he did not wish to surrender it. He admitted that he was short of this 50 acres. The only issue, therefore, presented by him was whether, when this state of facts was ascertained, he and Ballew entered into a new contract of rental for the 100 acres of land alone without the 50 acres. Lott claimed there was a change in the contract in this particular; Ballew, on the other hand, claimed there was none. All the squabbles or troubles between Lott and his other tenants were entirely foreign to the issues thus presented, and would have a tendency to injure the rights of the appellant.

[4] The seventh assignment complains at the action of the court in permitting the defendant to open and conclude the argument. By the bill of exception it is shown, after the introduction of the evidence and after the charge of the court was read to the jury, the defendant claimed the right to open and conclude the argument, which the court granted over the objection of plaintiff. The defendant, by his answer, first pleaded a general denial and in a separate paragraph, however, admitted the execution of the note, and stated he was now willing to satisfy the

same when the plaintiff would do justice for the default set up in his answer or cross-petition. In his prayer he asked for $950, less the principal of the note and the interest thereon, to the 1st day of November, 1916, when same could have been paid and would have been paid had plaintiff kept his agreement, and that no attorney fees be allowed against the defendant. Plaintiff sued on the note, asking for attorney's fees as stipulated in the note and interest from date. Judgment was rendered on March 10, 1917. The plaintiff sought to foreclose a mortgage lien on certain property. There appears to have been some controversy as to whether a certain mule was included or covered by the mortgage. It seems the note was executed for certain mules, to secure which the mortgage was executed. After their execution, one of the mules so sold defendant he afterwards swapped to plaintiff for another of less value, the difference being $40, which was credited on the note as of the date of its execution, the plaintiff claiming that the mortgage covered the last mule, or, if not, he had an equitable or verbal lien to secure the note. Plaintiff also sought to recover the value of the rent grown on the 100 acres of sod land. The record further shows the plaintiff on the trial was first required to introduce evidence on all these items; that in some measure the defendant rebutted the several contentions. However, it appears at the close of the evidence an agreement was entered into by the attorneys for the parties, to the effect that there were 1,100 bundles of bundle stuff, and that it was of the value of four cents per bundle, and that defendant owed plaintiff therefor rent to the sum of $14.80. There appears to have been no agreement as to cotton on the 100 acres, but it is treated as if plaintiff's statement of the amount was correct. However, in the trial amendment, filed by the defendant after the evidence was all in, the defendant, in his prayer therein, embodied an admission that for the rent on the land there was due plaintiff $114.92. The plaintiff, by his petition, claimed that there was due him $155, for rent and sought to prove that amount. However, the agreement, after the evidence as to the value of the bundle stuff, brings the total amount claimed in plaintiff's petition to $114.92. The trial court instructed the jury to find on the note the principal and interest, less $40 credit and attorney's fees, unless they should further find that Lott was responsible for the delay in the settlement, then in that case no attorney's fees were to be allowed, and also to find for $114.92 for rent. There was no such admission as required by rule 31 for the district and county courts (142 S. W. xx). Unless such admission is entered upon commencement of the trial, the plaintiff has the right to open and conclude both in introducing his evidence and in the argu-

ment. In this case he was required to assume the burden on the evidence, but was denied the right to open and conclude the argument. His cause was not admitted or agreed to, only in part. He was required to establish that he was entitled to his attorney's fees, and the jury in this case found against him on this issue, and not until after the evidence was introduced was it admitted that the defendant was due him the rent on the five bales of cotton or for the grain grown on the 100 acres. After the introduction of the evidence the agreement was entered as to the value of the rents, and the defendant then filed his trial amendment making such admission. We understand from the court's general statement that he considered it substantially admitted that the mule exchanged for the one originally mortgaged was covered by the mortgage, or that a lien should be foreclosed against it. It is also a rule well established that where there is one affirmative fact important to recovery by the plaintiff, and which is not admitted by the plaintiff, the plaintiff has the right to open and conclude. Caldwell v. Auto Sales, etc., 158 S. W. 1030; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663; Steed v. Petty, 65 Tex. 490.

We believe the trial court in this case was in error in giving the defendant the opening and concluding arguments, over the objection of the plaintiff.

The judgment will be reversed for the reason above set out.