ROCK CREEK OIL CORPORATION v. WOLFE.

No. 3343.

Court of Civil Appeals of Texas. Amarillo.

March 12, 1930.

Rehearing Denied April 2, 1930.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellant.

Fischer & Fischer, of Amarillo, for appellee.

## JACKSON, J.

The plaintiff, Frank Wolfe, instituted this suit in the district court of Hutchinson county, Tex., against the defendant, Rock Creek Oil Corporation, to recover the sum of $11,860, with interest thereon from January 6, 1929.

Plaintiff alleges: That the defendant is the owner of the west one-half of the southeast one-fourth of section 28, block Y, in Hutchinson county, Tex. That on July 23, 1928, plaintiff and defendant entered into a written contract, by the terms of which the plaintiff agreed to drill a well on said land for the defendant, to a depth of 3,200 feet, unless the oil-producing sand was reached at a lesser depth or unless the plaintiff was directed by the defendant to abandon or suspend drilling at a lesser depth. That the defendant agreed to furnish a standard derrick, all casing, oil saver, and steel measuring line, water and fuel, and the plaintiff agreed to furnish all other material, labor, and machinery and to drill said well for the consideration of $4 per lineal foot. That the contract provided that, upon reaching the oil-producing sand, the further work of boring into the oil sand, swabbing and cleaning out, and the other operations in connection with the finishing of said well, should be under the direction and order of the defendant and for such services the plaintiff was to receive $80 per day for each day of twenty-four hours. That, in compliance with the contract, the plaintiff began and drilled said well to the oil-producing sand, which was reached on December 1, 1928, at a depth of 2,875 feet. That on December 2d, under the direction and supervision of the defendant's duly authorized agent and superintendent, Frank Baker, the plaintiff continued the work of drilling in, cleaning out, and doing the other work in connection with the finishing of said well. That he was engaged at such work until December 8th, two days of twenty-four hours each and five days of twelve hours each, for which he was entitled to the sum of $360, which, together with the price of drilling the 2,875 feet at $4 per lineal foot, is the sum of $11,860, for which he sues. That said well was producing approximately 300 barrels of oil per day, and on said date, December 8th, the defendant, through its duly authorized agents, Frank Baker and its president, Ed. R. Mayer, advised plaintiff that no further work was to be performed by him on said well and instructed him to move off said premises with his tools, as the defendant desired to put the well on production in its then condition. That, pursuant to such instructions, the plaintiff took down his tools, discontinued the work and moved off the premises. That, by reason of such facts, plaintiff completed the well under the contract and the well was accepted by the defendant as a completed well. That the plaintiff fully complied with all the terms and obligations imposed upon him by said contract, and that defendant became obligated to pay him the sum of $11,500 for drilling to a depth of 2,875 feet and $360 for the subsequent work on said well at the rate of $80 per day of twenty-four hours each.

The plaintiff pleads in the alternative that, in the event he did not strictly comply with the terms and provisions of the contract, he substantially complied therewith, the defendant accepted the well as a completed well, and is thereby obligated to pay the plaintiff the consideration for his labor and services in the drilling of said well as the contract stipulated.

He further alleged in the alternative: That, if he neither strictly nor substantially complied with the contract, he did, in good faith, drill said well and completed it under the contract; obtained a producer of oil and gas; the defendant received the benefits and revenues thereof. That the reasonable value of plaintiff's services was $11,860, and seeks a recovery on quantum meruit. That the defendant was to pay to plaintiff $5,000 in cash on or before 30 days after the well was com-

pleted and execute its note for the balance of the consideration, payable on or before six months. That the defendant failed to pay plaintiff the cash and to execute its note, and the entire consideration is due and payable.

The plaintiff attached to and made a part of his petition a copy of the contract sued upon.

The defendant answered by general demurrer, special exceptions, general denial, and specially denied under oath: Plaintiff's allegations to the effect that Frank Baker was the duly authorized agent of the defendant to direct and control the operation and drilling of the well or that said agent had any authority to accept the well upon behalf of defendant or had any authority to take charge of and receive the well or to construe, interpret, change, or alter in any manner the written contract involved in the suit. That it was contemplated by the parties that the written instrument constituted the entire contract for the completion and delivery of the well in thorough good order and condition, free of all obstructions. That the compensation of $4 per foot was stipulated in the light of such common intent and contemplation. That to complete a well to the approximate depth named in the contract involved hazards and risks such as a crooked hole, collapsed casing, and lost tools, and such risk was the burden and responsibility assumed by the plaintiff under the contract, and, but for the assumption of such risk and the loss of time involved therein, the reasonable value of drilling said well would have been not to exceed $2 per lineal foot. That the plaintiff drilled the well in question down to a depth of about 2,920 feet, at which depth he lost 30 or 40 feet of tools in said well, which it was his duty, under the contract, to get out, but that, instead of removing the obstructions from said well and proceeding to the completion thereof, the plaintiff abandoned and left the well with the lost tools in the bottom thereof and at all times thereafter, notwithstanding repeated demands, wholly failed and refused to return and complete the performance of his obligations and duties under the contract. That by such conduct the plaintiff repudiated his contract, breached his obligations thereunder, by reason of which the defendant has been relieved of any obligation to pay plaintiff for the work at the price stipulated in the contract. That, among other things, the contract stipulated, in substance, that time was of the essence of the contract and that, in the event the plaintiff should neglect or discontinue the drilling of said well for the space of ten days, said neglect or discontinuance would forfeit plaintiff's right and claim under said contract without notice, and in such event the defendant, at its election, might take possession of the well, the ropes, tools, and appliances thereat belonging to the plaintiff, and finish said well, and that, if the defendant succeeded in

completing the well, the cost of such completion should be deducted from the contract price and the balance, if any, paid to plaintiff. That, at the time plaintiff lost his tools in the well, it was flowing a large amount of gas, and the plaintiff represented that it would be dangerous and hazardous to attempt to fish said tools out of the well on account of the gas pressure and the danger of fire, and represented that he wanted to postpone efforts to recover the tools and the completion of the well until after Christmas, at which time he would return and resume work, fish out the tools, and complete the well, all of which representations and promises were relied on by the defendant, but that such representations were not made in good faith, but with the design and purpose to abandon the contract and leave the well with the lost tools therein upon defendant's hands. That the defendant made repeated efforts to induce plaintiff to return and complete the well, which he wholly failed and refused to do, and, after waiting without results, the defendant, in the month of February, was forced to fish the tools out of the well and complete it. That to do this work it purchased the necessary tools and equipment, hired the necessary labor, fished the tools out of said well, drilled it deeper, and completed the well at a depth of 2,990 feet, at the total cost and expense of $1,404.89. That, if plaintiff is entitled to recover under the contract, said expenses must, under the terms thereof, be deducted from the amount due the plaintiff.

The defendant, by way of cross-action, alleged: That the tools were lost in the well about December 5, 1928, and remained in the well until about March 2, 1929, approximately four months. That, but for allowing the tools to remain in said well, it would have produced ten barrels of oil per day more than it produced with the tools in the well, and, by reason of plaintiff's breach of his contract, the defendant suffered a loss of oil in the amount of 1,200 barrels at the fair and reasonable value of $1 per barrel. That, during all of said four months, there was another well belonging to a third party located upon an adjacent lease about 500 feet from the defendant's well, which offset said well, during all of said time was producing oil in large quantities and draining oil from the land under the defendant's lease, and the plaintiff is liable to defendant for the reasonable value of said oil so lost, which is the sum of $1,200, together with interest.

The defendant attached to and made a part of its petition a copy of the contract sued upon.

On the answers of the jury to the special issues submitted in the main charge and the issues requested by defendant, the court rendered judgment for the plaintiff for the sum of $11,780, with interest thereon from Janu-

ary 8, 1929, at the rate of 6 per cent. per annum, from which judgment this appeal is prosecuted.

The appellant presents numerous assignments attacking as error the action of the court in overruling certain special exceptions, admitting the testimony of various witnesses on the question of the agency of Frank Baker, the insufficiency of the testimony to support the findings of the jury, and errors made by the court in the issues submitted, but, in the view we take of the case, it is unnecessary to enter into a discussion of such assignments.

■ Both the appellant and the appellee alleged various terms and provisions of the contract and attached a copy thereof to their respective pleadings. The contract is lengthy, and we deem it unnecessary to set out the contract or its terms at great length. The provision thereof which, on this appeal, in our opinion, controls the disposition of the case, is as follows: "It is further agreed that time shall be of the essence of this contract, and that in case the party of the first part shall neglect or discontinue the work of drilling said well for the space of ten days, such neglect or discontinuance shall of itself be a forfeiture of all rights and claims of the party of the first part under this agreement without any notice or demand by the party of the second part. The party of the second part shall have the right at any time after such forfeiture to take possession of said well and discontinue the drilling thereof and at its pleasure dismantle or abandon the same without liability to the party of the first part for any portion of the contract price above mentioned. The party of the second part shall also have the right at any time after such forfeiture as above mentioned, if it so elects, to take possession of said well and all the ropes, tools and appliances thereat, of the party of the first part, and drill said well to completion. In case it shall succeed in completing said well, the cost of such completion without any allowance to said party of the first part for the use of said ropes, tools and appliances, shall be deducted from the contract price above mentioned, and the balance, if any, paid to the party of the first part; but if said party of the second part shall not succeed in completing said well, it shall not be liable to the party of the first part in any sum whatever and shall return said tools, ropes and appliances to the party of the first part in as good order as when received, natural wear and tear and accidental loss or breakage excepted."

The appellant alleges that, on account of the breach of the contract by appellee in refusing to complete the well, it elected, under this provision of the contract, to fish the tools out of the well and complete it.

The testimony discloses without controversy that the appellee discontinued work, removed his tools from the well, and refused thereafter to continue work under the original contract, and about the middle of January informed appellant that he would do no more work on the well except under a new contract. As we interpret the provision of the contract above quoted, it is immaterial to appellant's rights in this case whether the appellee breached his contract by dicontinuing the work at the time he did or whether he discontinued the work at the direction and instruction of an authorized agent of appellant, because, the appellant having elected to finish the well and having done so, appellee was entitled under the contract to receive, after the deduction of the cost of the completion of such well, the balance of the contract price.

Conceding that the appellee was not entitled to receive the $360 for the work he claimed to have done on a per diem basis, appellant admits that appellee had drilled the well to a depth of 2,920 feet, which, at the price of $4 per lineal foot, would have amounted to $11,680 due appellee by appellant, less the expenses to appellant of completing the well. The testimony, construed most favorably for appellant, discloses that it expended, while fishing for the tools that had been lost in the well and in the completion of the well, the sum of $624.45. This, deducted from the $11,680 that appellant earned for drilling the well to a depth of 2,920 feet, would leave $11,055.55 due appellee by appellant under the contract.

■ The appellant challenges as error the action of the trial court in refusing to submit its special issue asking whether the well would have produced more oil while the tools were lost therein, if said tools had not been in said well, what would have been the average of the daily increase of such production; and what would have been the reasonable value per barrel of such additional production.

The testimony shows that, after the tools were removed from the well and the well drilled deeper, it produced some ten or twelve barrels more per day, but for how many days is not shown. The testimony also is to the effect that the agitation of the oil in a well affects the production, sometimes increasing and sometimes diminishing it; that, in addition to removing the tools, the well was drilled deeper. There is no testimony as to whether the drilling of the well deeper or the removal of the tools or the agitation of the oil by the work therein increased the production. The testimony fails to show that the additional oil that appellant claims it should have gotten during the time the tools were in the well was not obtained by it after the tools were removed and the well drilled deeper. The evidence fails to show that there was any difference in the market price of the

oil while the tools were in the well and after they were removed. It fails to show that the oil in appellant's well or under his lease was diminished by the offset well on an adjoining lease. The increase of ten or twelve barrels per day in the production after the removal of the tools and deepening of the well, indicates no lossage of oil. The testimony does show that the appellee affirmatively informed the appellant about the middle of January that he would do no more work on the well under the old contract, and appellant was, at least under its contract, at liberty to exercise its option at that date, to take charge of and finish the well.

Under these facts, we do not think the court committed error in refusing this requested issue.

 The appellant's contention that Frank Wolfe alone as plaintiff was not entitled to maintain the suit, because the testimony tended to show that he and his two brothers formed a copartnership called "Wolfe Bros." and that he made the contract for the benefit of the partnership, is not tenable. Cleveland et al. v. Heidenheimer, 92 Tex. 108, 46 S. W. 30; Inman v. Brown (Tex. Civ. App.) 147 S. W. 652; Bankers' Trust Company v. Schulze (Tex. Civ. App.) 220 S. W. 570.

 The appellant's assignment that the court committed error in rendering judgment against it for the sum of $11,860 because the provision of the contract stipulating that any compensation accruing to the plaintiff above $5,000 was to be evidenced by a note, is wholly disregarded in the judgment, cannot be sustained.

"The money, in such cases, is the primary element of the promise; and the stipulations that it may be discharged by something else is an alternative, that the maker may avail himself of, at or before the day of payment. If he fails to do so, the primary object of the promise must prevail; and it becomes a moneyed demand." Baker v. Todd, 6 Tex. 273, 55 Am. Dec. 775; Short v. Abernathy, 42 Tex. 94; Bummel v. Mayor, etc., 68 Tex. 10, 2 S. W. 740.

This is the settled law in Texas, and, the appellant having failed to pay the money and execute and tender its note within the time prescribed by the contract, the obligation became a money demand.

It is the opinion of this court that the judgment of the trial court should be reformed, permitting the appellee to recover the sum of $11,055.55, the difference between $11,680, which he earned under the contract, and the expense of $624.45, incurred by appellant in removing the tools and completing the well after appellee had discontinued work; and, as so reformed, the judgment is affirmed.