## BANKERS' TRUST CO. v. SCHULZE.*
### (No. 270-3497.)

(Commission of Appeals of Texas, Section B.
Jan. 25, 1922.)

1. **Damages** ⊕═62(1)—**Injured person requir-
ed to exercise ordinary diligence to mitigate
damages.**

Injured person is required to exercise ordi-
nary diligence to mitigate his damages.

2. **Damages** ⊕═62(4)—**Plaintiff with privilege
of cutting hay on defendant's land not requir-
ed to mitigate damages by similar contract
with others on ejectment before termination
of period.**

Where defendant sold plaintiff the privilege
of cutting hay off tract of land during specified
term, but prematurely ejected him, plaintiff
was not precluded from recovering damages for
inability to cut hay by failure, on being ejected
from defendant's land, to make similar contract
with owners of other land; the rule requiring
injured person to mitigate damages being in-
applicable.

Error to Court of Civil Appeals of First
Supreme Judicial District.

Action by B. F. Schulze against the Bank-
ers' Trust Company. Judgment for plaintiff
affirmed by the Court of Civil Appeals (220
S. W. 570), and defendant brings error.
Judgments of District Court and of Court of
Civil Appeals affirmed.

W. T. Armstrong, of Galveston, and An-
drews, Streetman, Logue & Mobley, of Hous-
ton, for plaintiff in error.

James B. & Charles J. Stubbs, of Galves-
ton, for defendant in error.

POWELL, J. This is an action for dam-
ages, instituted in the district court of Gal-
veston county, Tex., by B. F. Schulze, to
recover of the Bankers' Trust Company the
sum of $2,000 which the plaintiff alleged to
be the damage he had sustained by reason
of a breach by defendant of the following
contract:

"The Bankers' Trust Company, for a consid-
eration of one hundred and no/100 ($100.00)
dollars, leases to B. F. Schulze of Arcadia,
Texas, the privilege of cutting hay off of what
is known as Eureka Orchards tract in the I. R.
Lewis Survey in Galveston county, Texas, be-
tween this date and November 1st, 1918, said
consideration of $100.00 to be paid by said
Schulze to the Bankers' Trust Company out of
the proceeds of the sale of said hay as fol-
lows:

"$75.00 from the first car of hay shipped and
$25.00 from the second car of hay shipped from
said land, and a lien is retained by said Bank-
ers' Trust Company upon all the hay cut off of
said tract until said $100.00 is paid.

"It is further understood that the $100.00
agreed upon is to be paid absolutely and is not
in any way affected by the amount of hay cut
and sold off of said tract.

"Signed this the 24th day of September, A. D.
1917.          Bankers' Trust Company.
                    "By N. E. Meador, V. P.
"B. F. Schulze."

Schulze alleged that the trust company
ejected and excluded him from the leased
premises in February, 1918, and placed one
O. C. Rupe in possession thereof; that, had
he not been dispossessed, he would have cut
175 tons of hay from the leased premises
before his lease expired; that said hay
would have been worth $20 per ton and
would have netted him a profit of $2,000.

The Bankers' Trust Company answered by
general and special exceptions, general de-
nial, and special plea that the contract ac-
tually made and entered into between the
parties only extended to the 1st day of
November, 1917, and that the date, "1918"
was inserted in the contract through an
oversight and a typographical error, and
constituted a mutual mistake.

The cause was submitted to a jury on the
following general charge:

"Unless you believe from the evidence that
the date of 'November 1st, 1918' was inserted
in the contract instead of 'November 1st, 1917'
by mutual mistake, accident, or inadvertence,
you will return a verdict for the plaintiff and
assess his damages at such a sum as will com-
pensate him for the loss of the crop of hay
that he would probably have gathered in 1918
had he not been prevented from doing so by the
defendant. In such case the proper measure
of damages would be the market value of the
crop he would probably have gathered, at the
market price at Arcadia at the time, after de-
ducting therefrom the cost of gathering the
hay and the preparation for marketing the
same, together with the expense of market-
ing, as may be shown by the evidence."
"If you believe from the evidence that the
date, 'November 1st, 1918' was inserted in-
stead of 'November 1st, 1917,' by the mistake,
accident, or inadvertence of both parties, you
will return a verdict for the defendants."

In response to that charge, the jury re-
turned a verdict finding for Schulze, and
awarding him damages in the sum of $1,000.
Judgment was entered accordingly. The
judgment of the district court was affirmed
by the Court of Civil Appeals. See 220 S.
W. 570.

The Bankers' Trust Company obtained a
writ of error in the Supreme Court and the
cause is now before us for review and rec-
ommendation.

The controlling question upon this appeal
is whether or not the trial court erred in
his charge to the jury and in rendering judg-
ment thereafter in ignoring the doctrine of
the duty of a plaintiff, in suing for damages
arising from a breach of contract, to use
ordinary diligence to mitigate or minimize

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied February 22, 1922.

the same. Counsel for the trust company elicited much evidence tending to show that Schulze could have almost entirely saved himself from damage by the use of ordinary diligence. For instance, Schulze himself admitted that in the same vicinity he could have bought hay at 25 cents per ton, but that he made no effort to do so.

Counsel for the Bankers' Trust Company excepted to the general charge of the court for failing to take above doctrine into account in defining the measure of damages, and also submitted a special charge covering that exception. The exception was overruled and the special charge refused. Errors are assigned because of those rulings of the trial court, and the judgment is further attacked as being unsupported by the evidence, in that the undisputed evidence shows that the plaintiff, by use of ordinary diligence, could have mitigated his damages.

The rule invoked by the plaintiff in error as being the one which should have governed the trial court was ably declared by the Supreme Court of Texas more than 40 years ago by Justice Bonner in case of Brandon v. Manufacturing Co., 51 Tex. 121, as follows:

"It is well settled, that it is not only the moral but the legal duty of one who seeks redress for another's wrong to use due diligence to prevent loss thereby. The principle applies to a breach of contract, and a party is not entitled to compensation for injurious consequences from such breach, so far as he had the information, time, and opportunity necessary to prevent them. Sedg. on Dam. marg. p. 94, and authorities cited."

[1] The rule just quoted is still the general rule in this state, never having been overruled. However, no fact case like the one at bar, involving an application of that rule, has apparently heretofore been before our Supreme Court. That being true, and in view of the further fact that there seems to be some conflict of decision in other jurisdictions in this respect, we have taken the liberty of consulting very freely with our Supreme Court in the premises. In what we shall hereafter say, we are convinced we but reflect the views of that court itself.

The controlling question on this appeal is whether or not the aforesaid rule announced by Justice Bonner applies to a fact case like the one at bar. The trial court and Court of Civil Appeals hold that it does not. The latter court, at considerable length, discussed the facts of this case, and we have reached the conclusion that its construction of the contract and its application of the law thereto are in principle correct. Consequently we do not see that any useful purpose would be subserved by any extended discussion upon our part.

As we construe the contract in suit, it is one of sale, and defendant in error is entitled to the net profits under it.

[2] The plaintiff in error sold defendant in error the right or privilege of cutting hay off of the tract of land in controversy during a specified time. After cutting it, the hay was to belong to defendant in error. No part of it belonged to plaintiff in error; and, as provided in the contract, defendant in error was to pay the consideration of $100 independent of whether or not any hay was gathered from the land. Defendant in error under the contract had the right to appropriate all the hay to his own use and benefit, and, being deprived thereof, he was entitled, as damages, to recover the value of what he would probably have gathered, less the expense of cutting, preparing for market, and marketing the same. The contract is one of sale, with the right during a given period to enter upon plaintiff in error's land and remove the property; and it is not such a one as would require that the purchaser mitigate his damages caused by the seller's breach of it by going into the market and contracting for and purchasing other hay meadows and cutting and marketing hay from them.

We think the district court rendered the proper judgment, and that the Court of Civil Appeals correctly affirmed it. Therefore we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.