## UNITED ARTISTS CORPORATION v. STINNETT.

### No. 12008.

Court of Civil Appeals of Texas. Dallas.

Nov. 21, 1936.

Rehearing Denied Jan. 9, 1937.

Felix D. Robertson and Alvin H. Lane, both of Dallas, for plaintiff in error.

Pat S. Russell, of Dallas, for defendant in error.

JONES, Chief Justice.

This suit was instituted in a district court of Dallas county, by appellant, United Artists Corporation, against appellee, Ray Stinnett, to recover damages for the breach of several contracts entered into between them, under the terms of which appellee agreed to exhibit at different theatres belonging to him, motion pictures leased to him by appellant. On the findings of the jury, judgment was entered in favor of appellee, and the appeal has been duly perfected to this court. The following are the necessary facts:

Appellant is engaged in the business of leasing pictures to be exhibited by lessees in moving picture theatres. At the time of the execution of the contracts, appellee operated a moving picture house at Cleburne, known as the "Yale Theatre." On February 11, 1930, appellee contracted with appellant for the right to exhibit seven pictures in said theatre at Cleburne, and agreed to pay for such right the stipulated price of $100 each for six of said pictures, and $90 for another of said pictures, as evidenced by the seven separate written contracts. The contracts stipulated that the pictures should be exhibited as and when they respectively became available. All of these pictures became available on different dates from August 13, 1930, the date the first one became available, to October 1, 1930, when the last one became available, except the contract in respect to "12 United Artists Featurettes," only seven of which became available. On these seven contracts, appellant alleged that the damage was $652.50, the listed rental price of each picture contracted to be exhibited, except that of "12 United Artists Featurettes," the list price of which was $90, but as only seven of said featurettes became available, only seven-twelfths of the listed price of $90 is demanded.

On January 12, 1930, the parties entered into two other written contracts, under the terms of which appellee agreed to pay to appellant a rental of 35 per cent. of the gross receipts during the exhibition of such pictures. These became available, respectively, on January 22, 1930, and January 30, 1930. None of these pictures were exhibited by appellee, for the reason that on March 1, 1931, he sold the Yale Theatre at Cleburne, to another party, and such purchaser was not required by appellee to assume these contracts.

Appellant also sought to recover of appellee the sum of $115, the aggregate contract license price for the exhibition of three other pictures in a theatre owned by appellee and known as the Palace Theatre at Cleburne. This claim was evidenced by three written contracts, naming the price of each picture, and the contract was entered into January 28, 1929. These pictures were never exhibited in the Palace Theatre by appellee.

Appellant sought to recover damages for the breach of other contracts, entered into between the parties on September 2, 1931, by the terms of which appellee bound himself to exhibit pictures named therein for a designated price, in his Gem Theatre at Temple, as and when such pictures became available, and it is shown that they all became available during the life of the respective contracts, the earliest date on which a picture became available was October 15, 1931, and the last date on which a picture became available was April 28, 1932. None of these were exhibited in the Gem Theatre at Temple, for the reason that, before any of them became available, appellee was compelled to give up his moving picture venture in Temple. It appears that appellee, during the years of about 1924 to 1929, had engaged in the moving picture business in Temple, and that in 1929 he had sold out to the Dent moving picture concern, and, as a part of the consideration for the sale, appellee had bound himself not to engage in the moving picture business in the City of Temple for a period of ten years, and this time had not expired. The building in which the Gem Theatre was operated had become vacant, and appellee, believing that his contract had been for five years instead of ten, and also understanding that Dent had sold his picture business to the "Publix" interest, believed that he had the right again to enter the picture show business in Temple, and so believed at the time he entered into the ten contracts with appellant. However, he stated to the agent of appellant with whom he dealt that, if he was mistaken about his right to operate a pic-

ture show house in Temple, because of his previous contract with the Dent interests, he would expect the contracts to be canceled, and his testimony is that the agent agreed that such would be done, but the contracts contained no such condition.

Under the undisputed evidence, an exhibitor who should desire to contract with appellant for the lease of a motion picture would give to the traveling agent of appellant a written and duly prepared application for such contract. Appellant's agent would then deliver the application to the Dallas office, and it would be sent from there to the New York office for approval, and would have to bear the stamp of approval by the New York office before it would be an executed contract for the exhibition of the pictures. The New York office had thirty days from the receipt of the application within which to approve or disapprove the same.

A few days after these Temple contracts were sent to the New York office for approval, appellee became convinced that he could not then enter the moving picture show business in the City of Temple, for he learned that the provision of his contract of sale in respect to the time to lapse before he could again enter the picture show business in Temple, was ten years, and that it would be enforced. He at once notified the salesman, H. A. Daniel, of this fact and requested a wire to New York, to the effect that he had withdrawn his application for moving picture rights at Temple. He also notified the state manager in the Dallas office of such fact and made the same request. This was several days before the New York office approved the said ten contracts. This question of notification and request by appellee to notify the New York office of his withdrawal is disputed by both the sales agent who took appellee's application and appellant's state manager. However, the jury found in favor of appellee on this contradictory evidence and such finding is binding on this court. The state manager, Mr. Roberts, also testified that, if such request had been made, it would have been an end to the matter, for he would have wired the New York office that the matter was ended because of appellee's withdrawal of his application.

In respect to the Cleburne contracts, appellee makes the additional contention that he later entered the moving picture business in the City of San Antonio and was approached by Mr. Buchanan, appellant's sales agent, to sell picture films for the San Antonio theatre; that he informed the agent that the Cleburne contracts had not been formerly canceled and, unless they were canceled, he would not buy any pictures; that said agent told him, in effect, that they would be canceled, for it was the policy of appellant never to sue on a claim against a client with whom it was doing business; that he could not put the cancellation of the Cleburne contracts in as a consideration for the San Antonio contracts, because the New York office would disapprove same, send it back, and it would be a long time before it could be gotten through in such form, but that he would promise appellee that he (the agent) would see that such contracts were canceled.

Appellee's testimony was contradicted by the agent, but the jury findings show that appellee's testimony was accepted. On the belief that his Cleburne contracts would be canceled, appellee bought and paid for $2,200 worth of pictures, for his San Antonio theatre.

The case was submitted to the jury on special issues and the jury returned a verdict on said special issues, as follows: Appellant, by its acts and representations reasonably led defendant to believe that: (1) Its salesman, Mr. A. C. Buchanan, had authority to release appellee from the obligations of the Cleburne contracts, without submitting the matter in any way to the New York office; (2) the jury did not answer special issue No. 2 as to whether appellant, by its acts and representations made to appellee, reasonably led plaintiff (defendant) to believe its salesman, H. A. Daniels, had authority to release appellee from the obligations under the Temple contracts, without submitting the matter in any way to the New York office; (3) the jury made no finding on special issue No. 3 as to whether M. Doak Roberts had authority to release defendant from the Temple contracts, without first submitting the matter to the New York office; (4) when appellee signed the contracts with appellant for exhibition of certain of plaintiff's pictures at San Antonio, the plaintiff, acting by and through its representative, A. C. Buchanan, agreed, as a part of the consideration for such contracts, that the defendant would be released from the obligations imposed upon him under the contracts for the exhibition of appellant's pictures at Cleburne; (5) appellant, by the exercise of reasonable care and diligence,

could have realized money from any or all of the pictures included in the contracts, signed by appellee, for exhibition purposes at Cleburne; (6) appellant could have realized, by the exercise of care and diligence, from the sale of pictures on the Cleburne contracts, the sum of $400; (7) appellant, acting by and through its agent, H. A. Daniels, agreed that if appellee was compelled to quit the exhibition of motion pictures in Temple, the Temple contracts for the exhibition of pictures would be canceled by appellant; (8) appellee, before he received notice from the appellant of the acceptance of the Temple contracts, told M. Doak Roberts that he would be unable to use appellant's pictures at Temple, because he had to give up the theatre in Temple; (9) appellee, before he received notice from appellant of the acceptance of his Temple contracts, told H. A. Daniel he would be unable to use the appellant's pictures in Temple, because he had to give up the theatre in Temple.

On these findings of the jury, the court entered judgment denying appellant recovery on either the Cleburne or Temple contracts. On its theory that the several written contracts were complete in themselves, and that each contained the entire provisions of the sale of the pictures, and could not be modified by a previous oral agreement, appellant requested peremptory instruction in its favor, objected to the submission of each issue to the jury, and filed a motion for judgment non obstante veredicto, and duly excepted to the adverse ruling of the court on each of these matters. All of these questions are duly raised by appellant on this appeal. Appellee has not seen fit to favor this court with a brief, the case being submitted on the brief of appellant.

The case as to the Cleburne contracts was submitted to the jury on the theory that there was sufficient evidence to raise an issue of fact as to the apparent authority of Buchanan, appellant's agent, to release appellee from these said contracts, without being submitted first to the New York office. The evidence is undisputed that Buchanan had no such actual authority, and we think also it is undisputed that appellant knew that the agent had no such actual authority, but relied exclusively upon the promise of the agent to secure such release. The submission also has for its basis the assumed fact that Buchanan, for and on behalf of appellant did release appellee from these contracts.

█ We have carefully studied appellee's testimony, with the result that, in our opinion, it amounts to no more on this subject than a promise by Buchanan to appellee that he would secure from the New York office a release of such contracts, for the reason that it had never been the policy of appellant to press a claim against a client who was still in the moving picture business, and trading with appellant. In other words, the only meaning to be given appellee's testimony is that he was given the promise by Buchanan to see that he was not molested on the outstanding Cleburne contracts, and nowhere is language used in appellee's testimony consistent with an agreement by appellant, through Buchanan, that appellee was then released from the obligation of the Cleburne contracts. For which reason we sustain appellant's contention that neither the finding of the jury on special issue No. 1, to the effect that Buchanan was clothed with apparent authority to release appellee from the Cleburne contracts, nor the finding of the jury on special issue No. 4, to the effect that Buchanan did release appellee from the Cleburne contract obligations, is sustained by any substantial evidence. These two issues, therefore, can form no basis for the judgment rendered on the Cleburne contracts. This holding renders it unnecessary to discuss the question, raised by appellant, of what is commonly denominated the "oral evidence rule" relating to written contracts, and its application to the instant case.

█ We believe that, under the pleadings and the evidence, the court was warranted in submitting special issues Nos. 5 and 6. On the first of these issues, the jury made the finding that appellant, by the exercise of reasonable care and diligence, could have realized money from some or all of the pictures included in the Cleburne contracts. In response to the second of these special issues, the jury found that, by the exercise of reasonable care and diligence, appellant could have realized the sum of $400 from the sale of these pictures. We know of no rule of law that would make this character of a contract exempt from the general rule that the duty rests upon a plaintiff, seeking to recover damages on a breach of contract, to do what is reasonably within his power to lessen the damages. We apply this rule of law to this case and adopt these findings on special issues Nos. 5 and 6, as the findings of this court.

■ The result of this holding is that appellant, under this record, has the right to recover as damages on each of the Cleburne contracts the stipulated price named in each Cleburne contract, less the sum of $400 found by the jury in response to special issue No. 6, to be deducted from the aggregate. However, two of the Cleburne contracts did not name a stipulated sum as rental for the pictures, but provided that the rental should be 35 per cent. of the gross receipts secured from the exhibition of the pictures. There is no finding of the jury as to what this sum would be, and no requested finding thereon. The evidence is hazy on this question, and this court is not warranted in making a finding thereon. Therefore, the case as to the Cleburne contracts must be reversed and remanded, in order that the damages may be assessed.

In respect to the Temple contracts, appellee's defense rests on two general grounds, viz.: First, that H. A. Daniel, appellant's sales agent, agreed with appellee, before the execution of these contracts, that if appellee was compelled to give up the picture show business in the City of Temple, because of an antecedent contract with another party, preventing his entry in business in Temple, he would be released from the Temple contracts. The contracts are silent as to any such agreement, and the jury failed to answer issue No. 2 as to whether appellant, by its acts or representations made to appellee, reasonably led him to believe that its said salesman had such authority. As stated before, we think the record not only clearly shows that Daniel had no such power. The finding of the jury in response to special issue No. 6, to the effect that Daniel agreed that the contracts would be canceled, in the event appellee would have to give up the Temple theatre, is not sustained by any substantial evidence and cannot form a legal basis for a judgment in appellee's favor, and the judgment cannot be sustained on this finding. Second ground, on the two findings of the jury, in response to special issues Nos. 8 and 9, which we believe are not only sustained by the evidence, but are a sufficient basis for the judgment entered in appellee's favor in respect to the Temple contracts.

The finding on special issue No. 8 is, in effect, that appellee notified M. Doak Roberts, appellant's state manager, before the contracts were accepted by the New York office, that he would be unable to use the pictures in Temple because he was compelled to give up his theatre in such place. The same finding, in effect, is made in respect to H. A. Daniel, appellant's sales agent, who contacted appellee in the making of the Temple contracts. The effect of these findings is a withdrawal by appellee of his application, to be awarded the Temple contracts for exhibition of appellant's pictures, before appellant had acted on the application.

■ Each of these Temple contracts provided that, before a contract is entered into, the application therefor must be approved by the New York office, and that this approval must be given within 30 days. Before the approval is given by the New York office no contract is entered into. It was merely a proposition from one to the other, and subject to withdrawal, provided such withdrawal be made before the application has become a contract by the approval of appellant. Under the findings of the jury, appellee notified appellant's state manager and sales agent that the proposition had been withdrawn.

We are therefore of the opinion that the judgment of the lower court, denying recovery on the Temple contracts, should be affirmed.

It necessarily follows that the judgment of the lower court as to the Cleburne contracts must be reversed and remanded, and as to the Temple contracts affirmed, and it is so ordered.

Reversed and remanded in part, and affirmed in part.