SENTRY DEVELOPMENT
CORPORATION,
Appellant,

v.

Otto NORMAN et ux., Appellees.

No. 1027.

Court of Civil Appeals of Texas,
Tyler.

June 30, 1977.

Rehearing Denied July 28, 1977.

Howard D. Pattison, Athens, for appellant.

Rod L. Pirot, Dallas, for appellees.

McKAY, Justice.

This case involves the rescission of a contract to sell land. Appellees (hereinafter referred to as the husband and the wife) brought suit to recover $2,000.00 paid to appellant pursuant to a written instrument,

on alternative grounds (1) that there had been a failure of a condition precedent (approval of membership in a country club with which appellant was associated) which invalidated the contract, and (2) that the contract, if valid, was procured by fraud in the inception. Trial was before the court who rendered judgment for appellee in the amount of $2,000.00 plus interest and court costs, from which appellant has perfected this appeal. No findings of fact or conclusions of law were filed by the trial court.

■ Appellant brings three points of error complaining that the implied finding of the trial court "that the Appellees' application for membership in the Arrowhead Yacht and Country Club was not approved" was supported by (1) no evidence or (2) insufficient evidence or (3) that such finding was against the great weight and preponderance of the evidence. Before passing upon the points presented we must consider the rules we are bound to follow. Where no findings of fact or conclusions of law are filed we must presume on appeal that every fact issue and such implied findings as were necessary to support the judgment were found by the trial court. *Morris v. Texas Elks Crippled Children's Hosp., Inc.*, 525 S.W.2d 874, 881 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.). In passing upon whether there is no evidence to support the judgment we must consider only the evidence favorable to the findings of the trial court, but in passing on the insufficiency of the evidence we consider all the evidence in the record. *Richardson v. Holmes*, 525 S.W.2d 293, 295 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). In the absence of findings and conclusions the judgment of the trial court must be affirmed if there is any legal theory which supports the judgment which has support in the evidence. *Washington v. Law*, 519 S.W.2d 953, 954 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

The record reveals that some time early in September of 1973 appellees entered into negotiations with Paul Hendrix, a salesman for appellant, concerning the purchase of a lot in the Arrowhead Subdivision of Henderson County, Texas. The couple was looking for a retirement home, and the husband was particularly looking for a place to play golf. Hendrix told the husband that he was "setting up the golf course" near the lots in question. The course was to be eighteen holes long, and set up through the Arrowhead Yacht and Country Club. There were also plans for "the addition and building of a very nice club house which would be adequate." Hendrix told the husband that "nine holes at least" were planned for "spring of the next year." Tennis courts were also planned. These plans were confirmed in conversations with Alan D. Whatley, the president of appellant. On September 13, 1973, a contract for the sale of one of the lots in the subdivision was entered into between appellant and appellees, such contract being signed by both Hendrix and Whatley. The contract stated it was "subject to approval of application for membership in ARROWHEAD YACHT & COUNTRY CLUB which application is expressly made a part hereof." On September 15, 1973, appellees deposited a check for $2,000.00 with appellant as a "down payment." The husband testified that subsequent to this deal he had worked with Hendrix in his spare time to promote membership in the club.

As to approval of his membership in the club, the husband filled out an application for membership which was signed for approval by "A. D. Whatley for A.H.Y. & C.C." but the date of such purported approval is not in the record. Whatley testified that he had the authority to approve memberships in the club (although there is no evidence from any other source that Whatley was authorized to act for the Arrowhead Yacht and Country Club in approving applications for membership) and that upon each approval he sent a copy of the application to the new member involved. He further testified that Hendrix had brought him the appellees' application, that he had signed the application and that he had told Hendrix to tell the appellees that they would be acknowledged as members and have full use of the facilities although membership cards weren't to be

made available until later. However, the husband testified that he was never informed as to his acceptance nor was he ever sent a dues statement. Whatley said that he didn't "recall a specific communication" to the husband concerning the matter but that he had told him that there would be "no dues until all the facilities were complete" and that "the charter initiation fee would be waived in this case." The wife, when asked if she had ever received "any type of form of acceptance in the Arrowhead Yacht and Country Club" replied, "To my knowledge, no."

Subsequent to the appellees' purchase, construction began "lagging" through the spring of 1974. The husband testified that he never was able to use the golf course, that "the grass hadn't grown on the fairway, it was planted, but it was in the spring, it wasn't time for it to be mature yet." The only clubhouse built before February 1, 1975, was a temporary one which the husband "presumed it was Paul Hendrix' house being built." The club itself was not incorporated until September of 1975; up until that time it was "represented as Mr. Bud Ross, Trustee." The husband, when asked whether he would have bought the property had it not been for the promises of the club and the golf course, replied, "I doubt it." The husband made his first demand for a refund on the down payment on June 30, 1974, on the golf course when Whatley "said he would send me a check the next week"; however, by letter dated September 3, 1974, Whatley refused to refund the money.

■ Where the trial judge is the trier of fact he may draw reasonable inferences and deductions from the evidence, and his findings, including implied findings, may not be disregarded by an appellate court if the record discloses evidence of probative value which, with inferences that may be properly drawn from the evidence, will reasonably support such findings. *Johnson v. Buck,* 540 S.W.2d 393, 411 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n. r. e.). It is the sole province of the fact finder to judge the credibility of the witnesses and the weight to be given their testimony.

■ Our view of the record is that there is some evidence of probative value which supports an implied finding that appellees were not approved for membership in the Arrowhead Yacht and Country Club, and that, therefore, the condition precedent was not met. Whatley testified that it was his practice to notify new members of their approval by sending a copy of the application to such new members, but the record reveals that no notice by anyone was given to appellees. Appellees testified that they did not receive any notice of being approved for membership. We believe the record shows that there is at least circumstantial evidence that appellees were not accepted for membership. We hold that the evidence supports the implied finding that appellees were not approved for membership in the Arrowhead Yacht and Country Club, and that such finding supports the judgment. Point one is overruled.

After reviewing the entire record, we are of the opinion the evidence is sufficient to support the judgment, and that such judgment is not against the great weight and preponderance of the evidence. Points two and three are overruled.

The judgment of the trial court is affirmed.