## Kent L. COPENHAVER and Earl T. Platt d/b/a Valley Laundry Service

### v.

## John W. BERRYMAN, Sr., John W. Berryman, Jr., and Joel William Ellis d/b/a The Village Apartments.

### No. 1483.

Court of Civil Appeals of Texas, Corpus Christi.

June 12, 1980.

Rehearing Denied June 12, 1980.

Jeffrey W. Jones, Johnson & Davis, Harlingen, for appellants.

Joel William Ellis, Harlingen, for appellees.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

Appellants filed a motion for rehearing bringing to our attention certain matters that warrant elaboration. Although we adhere to our original determination of this case, in order to respond to appellants' complaints on motion for rehearing in an orderly fashion, we withdraw our original opinion and substitute the following opinion in its place.

Kent L. Copenhaver and Earl T. Platt, d/b/a Valley Laundry Service, filed suit against John W. Berryman, Sr., John W. Berryman, Jr., and Joel William Ellis, d/b/a The Village Apartments, seeking damages for defendants' breach of a written contract between the parties. After a non-jury trial, the trial judge entered a judgment awarding plaintiffs damages in the amount of $3,525.84. The trial judge filed findings of fact and conclusions of law supportive of this judgment. The plaintiffs appeal, contending that the express terms of the contract and the undisputed evidence, entitled

them to more damages than were awarded by the trial court.

The defendants own a large apartment complex in Harlingen, Texas. The plaintiffs are in the business of owning and operating laundry facilities which are located in various apartment complexes, condominiums, and trailer parks in several cities in the Rio Grande Valley. In December, 1975, plaintiffs purchased eight washing machines and four driers from Mr. B. O. Hooks, who owned the machines and operated the laundry facility located at the defendants' apartment complex. Thereafter, on January 21, 1976, plaintiffs and defendants executed a contract which is now in question.

The parties operated under the terms of the five-year contract until October, 1976, when defendants, who had purchased their own laundry equipment, desired to terminate the contract. By a letter dated November 10, 1976, defendant Ellis advised plaintiffs that the contract was being terminated as of December 1, 1976. Defendants protested and an exchange of correspondence between the parties ensued. After failing to reach an agreement concerning defendants' expressed intention to terminate the contract, plaintiffs were informed on March 10, 1977, that their laundry equipment had been removed from the premises. The next day, plaintiff Copenhaver drove to the apartment complex and recovered the laundry equipment.

Plaintiffs filed suit, alleging that they had complied with all of the duties pursuant to the contract and that defendants had wrongfully repudiated and breached the contract by removing plaintiffs' equipment and installing other equipment, thus, making it impossible for plaintiffs to continue their operation under the contract. Plaintiffs alleged that they were entitled to conduct the laundry operations for an additional forty-seven months, and by such, would have earned a profit of $13,886.58, after deducting defendants' share of the gross receipts and other operating expenses. Defendants answered, alleging, in part, that plaintiffs had suffered no damages from the removal of their laundry equipment because plaintiffs had placed such equipment into immediate use in other laundry facilities they operated and were earning as much or more now than when the equipment was located in defendants' facilities.

After a non-jury trial, the trial judge entered a judgment awarding plaintiffs damages in the amount of $3,525.84. In support of this judgment, the trial judge entered the following relevant findings of fact: 1) "[T]he Equipment Lease Agreement" executed by the parties was "for the purpose of leasing laundry equipment" by the plaintiffs to the defendants; 2) defendants had breached such agreement on March 10, 1977; 3) plaintiffs suffered damages caused by such breach for the six-month period from March 10, 1977, until September 10, 1977, in the amount of $3,525.84; 4) after September 10, 1977, plaintiffs leased the equipment covered by the agreement to others and received more rental income from the same machines; 5) plaintiffs did not suffer any loss or damage after September 10, 1977, by reason of defendants' breach of the contract in question.

Plaintiffs' appeal is based upon the trial court's failure to award damages for the entire duration of the forty-seven month period remaining under the terms of the contract.

Before addressing the merits of plaintiffs' specific points, however, a brief review of some of the principles relating to damages and mitigation of damages is necessary to gain the proper appellate perspective of the contentions advanced by the respective parties. As a general rule, damages for breach of contract seek to allow the injured party to have just compensation for the damages or loss actually sustained. *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. Sup.1952); *Blakeway v. General Electric Credit Corporation*, 429 S.W.2d 925, 929 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). The burden is upon the complaining party to establish his right to recover compensatory damages by proving he suffered a pecuniary loss as a result of the breach. *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex.

Sup.1952); *Braselton-Watson Builders, Inc. v. Burgess*, 567 S.W.2d 24, 28 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.).

Here plaintiffs sought to recover damages measured by loss of profits they sustained due to defendants' breach of the contract. As a general rule, where it is shown that a loss of profit is a natural and probable consequence of the act or omission complained of, and the amount is shown with sufficient certainty, recovery of lost profits is permitted. Anticipated profits, however, cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations or a change of business, or where there is no evidence from which they may be intelligently estimated. Evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation. It is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. *Riddle v. Lanier*, 136 Tex. 130, 145 S.W.2d 1094 (1941); *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938); *General Supply and Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.). The term, "net profits" is, " 'to a large degree, self-explanatory and implies, generally speaking, what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business.' " *Mangham v. Hall*, 564 S.W.2d 465 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *G & W Marine, Inc. v. Morris*, 471 S.W.2d 644 (Tex.Civ.App.—Beaumont 1971, no writ). See *Stapper v. Van Valkenburgh & Vogel*, 128 S.W.2d 466, 467 (Tex.Civ.App.—Amarillo 1939, writ dism'd judgm. corr.). In the calculation of net profits, allowance should be made for expenditures that the plaintiff would have been compelled to make, and also for the value of the plaintiff's time. 17 Tex.Jur.2d, Damages, § 144 (1960). Generally, loss of profits because of the diminution of "gross receipts" is measured by the loss of "net profits" and not the loss of "gross receipts" except for the actual expenses which would have been incurred had the "gross receipts" been received or fixed with reasonable certainty. *Mangham v. Hall*, 564 S.W.2d 465, 468 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Hall v. Brown*, 398 S.W.2d 404, 408 (Tex.Civ.App.—Waco 1966, no writ); *American Const. Co. v. Caswell*, 141 S.W. 1013, 1018 (Tex.Civ.App.—Austin 1911, no writ); 25 C.J.S. Damages § 90 (1966).

While the defendant is liable for the pecuniary loss sustained by the party injured by the breach, the party so injured must exercise, as a general rule, reasonable efforts in an attempt to minimize his damages. As stated by our Supreme Court in *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 232 (1936):

> "Where a party is entitled to the benefits of a contract and can save himself from the damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions."

Although the injured party has a duty to minimize his loss, the burden of proof as to the extent to which the damages were or could have been mitigated lies with the party who has breached the contract. *Houston Chronicle Pub. Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 929 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *LTV Aerospace Corporation v. Bateman*, 492 S.W.2d 703, 709 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Polis v. Alford*, 273 S.W.2d 79, 80 (Tex.Civ.App.—San Antonio 1954, writ ref'd).

Plaintiffs' first ten points of error, which are grouped together for argument and authority purposes, "all relate to the amount of damages which the Court awarded [plaintiffs]." These specific points of error encompass various complaints concerning the trial court's award of damages, including complaints attacking particular findings on legal and factual sufficiency grounds. Appellants, however, briefed (with arguments and authority) only the following points of error:

"FIRST POINT:

The trial court erred in awarding [plaintiffs] damages for, less than the term remaining under the contract at the time of its breach.

\* \* \* \* \*- \*

EIGHTH POINT:

The trial court erred in construing the contract between the parties . . . as an 'equipment lease agreement' when as a matter of law it was an agreement giving [plaintiffs] the exclusive right to carry on a business at a location on [defendants'] premises. [franchise]

NINTH POINT:

The trial court erred in concluding as a matter of law that [plaintiffs] could recover of and from [defendants] only $3,525.84 in damages."

These points of error apparently contain the heart of plaintiffs' appellate complaints.

In our original opinion, we refused to consider points of error 2 through 7 and 10 because they are not briefed, fail to meet the minimum requirements of Rule 418, T.R.C.P., and are therefore waived. *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380, 389 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Inman v. Padrezas*, 540 S.W.2d 789, 797 (Tex.Civ.App.—Corpus Chisti 1976, no writ).

On motion for rehearing, plaintiffs complain that we erred in our holding that these points of error were not briefed and, thus failed to meet the requirements of Rule 418, Texas Rules of Civil Procedure. In addition, they complain that we erred by failing to rule upon and sustain their points of error 2 through 7 and 10. Points of error 2 through 7 attack certain findings on legal and factual sufficiency grounds. Point of error 10 complains of the trial court's failure to make further additional and amended findings plaintiffs requested.

Plaintiffs' basic contention is that they properly complied with the following portion of Rule 418, which states as follows:

"(e) *Brief of the argument.* A brief of the argument, presenting separately or grouped, if germane, the points relied upon for reversal, the argument to include (i) a fair, condensed statement of the facts pertinent to such points, with references to the pages in the record where the same may be found; and (ii) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.

. . . Repetition or prolixity of statement or argument must be avoided."

Plaintiffs complained that the only portion of that rule they failed to comply with is the requirement that the authorities relied upon to maintain their legal and factual sufficiency attacks on certain findings were omitted. Plaintiffs contend that "no authorities were required to be discussed. It is axiomatic that a fact finding for which there is no evidence or insufficient evidence cannot be sustained on appeal, Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960); 3 McDonald, *Texas Civil Practice*, § 16.10, p. 27 (1970)." Plaintiffs also contend that parties are not required to restate well-known and uncontroverted points of law under Rule 418, and that, to require them to do so, leads to repetition and prolixity of argument in violation of that rule.

We would be more inclined to agree with plaintiffs' position had they grouped for argument and authority purposes those points of error relating to legal and factual sufficiency of the evidence to support the trial court's findings. These legal and factual sufficiency attacks, however, were buried among unrelated (ungermane) points of error complaining of the trial court's construction, as a matter of law, of the parties' agreement. These were the only points of error that were briefed and they all related to the question of whether or not the doctrine of mitigation of damages applied to the case. The only recitation of the facts concerning the legal and factual sufficiency of the evidence was located in that portion of the brief which was the general factual statement of the case relating to all points of error. Under the argument and authority section, however, plaintiffs failed to re-

late this evidence (or the absence of such evidence) to any of the findings of the trial court which they were attacking. The argument and authorities portion of the brief concerns only the points of error which we discussed in our original opinion (the first point, eighth point, and ninth point). Also included among these first ten points of error was an additional point of error (No. 10) which complained of the trial court's failure to make the additional findings plaintiffs requested. This point of error contains no argument and no authorities. Under these circumstances, even with the most liberal construction of the briefing rules, we are still of the opinion that plaintiffs' appellate brief fails to meet the minimum requirements of Rule 418.

Nevertheless, in order to give plaintiffs every benefit of the doubt, we have reviewed the evidence in support of the trial court's findings plaintiffs attack in accordance with the guidelines concerning "legal" and "factual" sufficiency standards set forth by our Supreme Court. See *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

Plaintiffs testified that all of the equipment in question was in use in other locations within six months after such equipment had been removed from defendants' premises. There is some testimony to indicate that plaintiffs could not determine the exact location of these machines nor the sum of money the machines generated in their new locations. There is other testimony to indicate that plaintiffs had this information available to them but that plaintiffs would have to search their records to obtain the information, which plaintiffs had not done as of the time of trial. Plaintiffs agreed that all of the equipment in question as relocated was "earning money," and "are still earning money." Plaintiffs testified that they did not pay for the utilities in any of their laundry contracts. It was probable that the equipment was relocated under contracts allowing plaintiffs at least the same percentage of the gross receipts (60%)

as plaintiffs received from the equipment when it was located on defendants' premises. The cost to the consumer, however, had increased by 35% from the date of the breach to the date of the trial.

There is evidence that plaintiffs experienced an increase in the size of their business between the time of the breach and the time of trial by adding approximately 350 machines and at least fourteen to fifteen new locations. Plaintiffs testified in substance that the major factor in expanding their business was obtaining desirable locations. According to plaintiffs, equipment was comparatively easy to obtain. Plaintiffs admitted the profitability of a particular location was dependent upon some fluctuating factors which were beyond their control such as seasonal fluctuations and the percent of occupancy. There is little or no evidence concerning these factors as they related to the laundry location in question or to any other laundry locations containing plaintiffs' equipment.

Plaintiffs presented somewhat contradictory and confusing testimony concerning the manner in which "profits" were determined. There is testimony that the service for all of the equipment was done by one man who was compensated by a fixed salary and that the only variable expenses were the cost of repair parts and mileage reimbursement expenses. Although plaintiffs testified in substance that their fixed expenses or overhead did not increase when they added defendants' laundry facility to their business, they also testified that fixed expenses represented an amount of approximately 30% of their gross income, a variable figure.

■ We are of the opinion that there is evidence in the record to support the finding of fact that the plaintiffs suffered no damage from September 10, 1977, to the date of trial. After September 10, all of the equipment was in use in other locations. There is also some evidence in the record from which the trial judge, sitting as factfinder, reasonably could conclude that plaintiffs were generating at least as much

income, if not more, from the operation of the machines in question after September 10, 1977.

When the evidence is viewed in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary, there is evidence of a probative nature to support the findings. In such a situation, we cannot substitute our findings of fact for those of the trial court. See *Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607, 609 (Tex.Sup. 1979); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.Sup.1965). We are also of the opinion that, after viewing all of the evidence, these findings are not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. See *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). It must be remembered in a nonjury trial, the trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Sentry Development Corp. v. Norman*, 553 S.W.2d 664 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.); *Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

Plaintiffs sought recovery of their lost net profits occasioned by the defendants' breach of the contract in question. On appeal, plaintiffs first contended they should be entitled to recover $13,809.54, the sum representing their lost profits for the term of 47 months remaining under the contract which they computed as follows:

month

| | |
|---|---|
| $500.40 | (gross income . . . monthly average) |
| × .6 | (plaintiffs' portion) |
| 300.24 | (income to plaintiffs) |
| – 6.42 | (average mileage & parts expense) |
| 293.82 | (monthly profit) |
| × 47 | (months remaining under the contract after |
| $13,809.54 | the breach) |

On motion for rehearing, plaintiffs contend that "[a]t the very least, Plaintiffs are entitled to recover damages of $10,686.58." This revised amount includes a deduction of $3,200.00, the initial cost of purchasing the equipment in question. Although the record is not entirely clear on this point, plain-

tiffs' damage calculations are predicated upon gross receipts, mileage allowance, and cost of repair parts for the twelve month period immediately preceding the breach (March 1975–March 1976). These calculations apparently do not include a deduction for the cost of the parts necessary to initially repair the machines in question which were in a "very poor", "run-down condition", "out of order, broken, not usable", when they were purchased in December, according to plaintiff Copenhaver. Although each plaintiff testified he devoted substantial time to the laundry service business, neither plaintiff would place a value on his time as an expense of the business generally or as an allocation to the location in question.

We are of the opinion that plaintiffs failed to prove they suffered damages beyond the six-month period the machines were not in operation in any other location. Even if we assume plaintiffs introduced sufficient proof that they expected to receive $13,809.54 in net profits over the remaining 47 months of the contract, such proof alone does not necessarily lead to the conclusion plaintiffs are entitled to recover that sum under the general rules applicable to contracts.

Assuming plaintiffs owned 8 machines which were placed on defendants' premises pursuant to the terms of the contract in question, and assuming that the defendants breached the contract with 47 months of the contract term remaining, would plaintiffs be entitled to recover such amount from defendants if, the day after the breach, they relocated the same equipment on other premises under another contract from which the plaintiffs expected to receive net profits in the sum of $13,809.54 for the next 47 months? To allow plaintiffs to recover such sum from defendants and, at the same time, to receive the same sum from the equipment in question as it is relocated would be tantamount to allowing a double recovery by permitting plaintiffs to recover more than the benefit of their bargain from defendants. If, on the other hand, plaintiffs satisfactorily proved that

the net profits expected from the second location would be only $10,000.00 for the next 47-month period, and, in addition, that plaintiffs had to expend an additional $3,000.00 to obtain the new location, then, general contract principles would allow plaintiffs to recover $6,809.54 from defendants in order to receive the benefit of their initial bargain. However, there is nothing in the record before us which would warrant such a result in this case.

■ Plaintiffs, however, apparently contend the case before us is different because of the nature of their over-all business. In effect, plaintiffs contend the proof established, as a matter of law, that they were capable of performing a number of concurrent laundry facility contracts which performance is limited solely by the availability of facilities for the placement of such equipment. Implicit in this contention is the assumption that, when defendants breached the contract in question, the expansion of plaintiffs' business was thereby limited because they were forced to place the equipment in question into a location they would have acquired anyway.

The testimony concerning the plaintiffs' over-all business is vague, speculative, and conclusory. The only evidence we can find to substantiate this contention is some general testimony to the effect that plaintiffs acquired some 14 to 15 new locations after the breach. Plaintiffs admitted they did not even know where the machines in question were ultimately placed. Nor, did plaintiffs introduce evidence from which it could be reasonably concluded that they would have expanded to each new location even had defendants not breached the contract in question and that defendants' breach somehow limited their expansion.

We are of the opinion that the trial judge could reach no reasonable conclusion other than to find plaintiffs had not proved they

were damaged beyond the six-month period, after which all the machines were in use in other locations.

Our original opinion dealt solely with the doctrine of mitigation of damages because the parties addressed only that issue, even though the trial court found as a fact that plaintiffs suffered no damages after the initial six-month period after the breach. Although all of the parties on appeal recognized the general principle that the law refuses to award damages which the injured party mitigated or reasonably should have mitigated, plaintiffs contend that "this doctrine is simply not applicable to the present case."

According to plaintiffs' theory, as we understand it, the trial judge erroneously construed the contract in question to be a lease of equipment contract rather than a contract "granting [plaintiffs] an exclusive franchise to conduct a business at a desirable location for a fixed period of time." Plaintiffs contend that the legal principle requiring mitigation of damages does not apply to the breach of a franchise agreement. Accordingly, plaintiffs argue that the trial judge erred by refusing to enter a judgment awarding them damages for the remaining term of the agreement [47 months] rather than limiting the damages following the breach of the contract to damages occurring within the six months that plaintiffs' laundry equipment was not in use in any other location. We do not agree.

■ The contract does not contain the usual terms generally associated with the relationship of a franchisor and franchisee. See E. G. Brown, Franchising—A Fiduciary Relationship, 49 Tex.L.Rev. 650 (1971); Annot., Franchisor's Non-Performance—Damages, 41 A.L.R.3d 1463 (1972); *Keener v. Sizzler Family Steak Houses*, 424 F.Supp. 482 (N.D.Tex.1977).[1] Even if we accept

---

1. Nor do we necessarily agree with defendants' contention that the contract in question contains the general terms of an equipment lease agreement. Here, possession of the laundry equipment is not within the exclusive control of the leasee (plaintiffs) for specified rental pay-

ment. Rather, the terms of the contract specify that defendants are to provide suitable facilities for the placement of plaintiffs' equipment and utilities necessary for operation of the laundry. Plaintiffs maintain control of the servicing of the equipment and of the collection

plaintiffs' argument that the contract grants plaintiffs the privilege of conducting a laundry business for a period of five years on the premises owned by defendants, we have found no case that would make this contract specially exempt from the general rule requiring the party injured by the breach to do what is reasonably within his power to lessen his damages.

Each of the authorities upon which plaintiffs rely is distinguishable from the present case. See *Keener v. Sizzler Family Steak Houses*, 424 F.Supp. 482 (N.D.Tex.1977); *Bankers' Trust Co. v. Schulze*, 220 S.W. 570 (Tex.Civ.App.—Galveston 1920), aff'd, 236 S.W. 703 (Tex.Com.App.1921, judgment approved); *Kearsarge Computer, Inc. v. Acme Staple Co.*, 116 N.H. 705, 366 A.2d 467 (1976). *Keener v. Sizzler Family Steak Houses*, supra, involved the breach of a private franchise agreement by the franchisor, where the issue of mitigation as it related to compensatory damages was not at issue because the franchisee was prevented from starting a franchise within the exclusive territory granted under the terms of the contract. Because the court had no basis upon which to award damages based upon lost profits, the franchisee was awarded the fair market value of the franchise right. It is noteworthy that, in support of its holding which affirmed the trial court's refusal to grant consequential damages for the equipment and materials rendered surplus by the franchisor's breach, the court stated:

> "Further, there is not a sufficient showing that [the franchisee] endeavored to liquidate these surplus items in mitigation of damages."

The present case does not involve a private franchise agreement. Even so, the case upon which plaintiffs rely does not support their implicit assumption that the injured party does not have to mitigate his damages merely because a franchise agreement has been breached.

■ Plaintiffs contend that their laundry equipment business is analogous to the computer processing data business in the case of *Kearsarge Computer, Inc. v. Acme Staples Co.*, 116 N.H. 705, 366 A.2d 467 (1976). They argue that the availability of laundry equipment is virtually unlimited and that the expansion of their laundry equipment business is limited only by the availability of locations for the placement of such equipment. Plaintiffs apparently contend that they could have opened each of their other locations had defendants not breached the contract in question and that defendants should not receive the benefit of plaintiffs' diligent business practices. Unlike the *Kearsarge* case, however, we are concerned with the profits generated by specific equipment located in specific facilities. While we might agree that the profits generated by additional laundry equipment plaintiffs purchased after the breach to open other laundry facilities located elsewhere should not be considered in mitigation of the damages plaintiffs sustained due to the interruption of the use of the laundry equipment previously located on defendants' premises, we are of the opinion that the income generated after the breach by the same equipment previously located on defendants' property should be considered in mitigation of plaintiffs' damages. See *Houston Chronicle Pub. Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.

---

of proceeds of the operation. To compensate defendants for providing the facilities and utilities, the contract specifies that defendants shall receive forty percent of the gross proceeds collected from the operation of the equipment. The contract is more analogous to a concession contract. See e. g. *Hancock v. Bradshaw*, 350 S.W.2d 955 (Tex.Civ.App.—Amarillo 1961, no writ); *B. & B. Vending Company v. Ducharme*, 349 S.W.2d 630 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.); compare *B. K. Beutell v. United Coin Meter Co.*, 462 S.W.2d 334 (Tex.

Civ.App.—Waco 1970, writ ref'd n. r. e.), with *Joseph v. Sheriffs' Association*, 430 S.W.2d 700 (Tex.Civ.App.—Austin 1968, no writ); and *Commercial Music Company v. Vanzura*, 440 S.W.2d 345 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.).

We view the finding of fact entered by the trial judge concerning the nature of the agreement to be immaterial, however, to the proper disposition of this case. See 3 McDonald Texas Civil Practice, § 12.37, p. 1169 (1965).

r. e.); *Blakeway v. General Electric Credit Corporation*, 429 S.W.2d 925 (Tex.Civ.App. —Austin 1968, writ ref'd n. r. e.); *Waterman Lumber & Supply Co. v. Holmes*, 161 S.W. 70 (Tex.Civ.App.—Galveston 1913, no writ); *Hamlett v. Coates*, 182 S.W. 1144 (Tex.Civ.App.—Dallas 1915, writ ref'd); *United Artists Corporation v. Stinnett*, 101 S.W.2d 300 (Tex.Civ.App.—Dallas 1936, no writ).

The case of *Bankers' Trust v. Schulze*, 236 S.W. 703 (Tex.Com.App.1922, judg't adopted), affirming 220 S.W. 570 (Tex.Civ.App.—Galveston 1920), involved a contract whereby the plaintiff as "lessee" leased defendant's pasture for a specified sum for the purpose of allowing plaintiff to enter defendant's land and to cut the hay off a tract of land. The defendant wrongfully excluded plaintiff from his land prior to the end of the contract period. Plaintiff proved that he expected to earn a certain net profit from the sale of the hay he harvested and the Court of Civil Appeals affirmed the trial court's award of this amount. There is no evidence in the record that plaintiff attempted to obtain hay from other locations. On appeal, defendant landowner contended that plaintiff was under a duty to minimize his damages by obtaining hay from other locations. The Court of Civil Appeals disagreed saying:

> "We cannot agree with this contention of appellant. The contract which was broken in this case was not one for personal services, nor one for which the parties contemplated should be performed with any special means or instrumentalities. It was simply a contract by the terms of which appellant, for a consideration of $100.00 sold to appellee the privilege of cutting grass or hay then growing and that to be grown, on a certain 500 acres of land for the year 1918. . . . We do not think the rule invoked as to mitigation of damages by subsequent earnings and profits, or by profits which might have been earned by appellee applies in this case. A distinction is recognized between a case of the character of the one now under consideration and contracts for personal services for a given term at specified wages, and other contracts, the performance of which contemplate the exclusive personal service of the one obligated to perform the same, or contracts which contemplate its performance by or with certain specified instrumentalities at the disposal of the performing contractor, such as employment of clerks, agents, laborers, or domestic servants for a definite period of time, and such employment of the exclusive services of a person and his instrument or instruments by or with which he must necessarily perform the contemplated work."

See *Bankers' Trust Co. v. Schulze*, 220 S.W. 570, 571 (Tex.Civ.App.—Galveston 1920). The Texas Commission of Appeals Court affirmed the Court of Civil Appeals on the basis that the contract in question was a contract of sale and defendant in error was entitled to the net profits under it. See *Bankers' Trust Co. v. Schulze*, 236 S.W. 703, 704 (Tex.Com.App.1922, judg't adopted).

Here, we do not have a contract of sale. Instead, we have a contract whereby specific instrumentalities (laundry equipment) are necessary to the performance of the contract in question. We have found no case which would exclude plaintiffs from the application of the mitigation of damages doctrine in this case. Appellants' points of error are overruled.

Defendants have failed to brief their sole cross-point and it is also overruled. The judgment of the trial court is affirmed.